UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| DEANNA W. MINTON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-462-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 10 & 11] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 12 & 13]. Deanna W. Minton ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I. PROCEDURAL HISTORY**

On October 17, 2012 the Plaintiff filed an application for disability insurance benefits, claiming a period of disability which began February 1, 2008. [Tr. 129-36]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 85]. During

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

the hearing, the Plaintiff amended her alleged onset date to September 1, 2012. [Tr. 9, 30-31]. On May 5, 2015, following a hearing, the ALJ found that the Plaintiff was "not disabled." [Tr. 6-25]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-3], and the ALJ's decision became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on July 22, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the

Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff alleges that the ALJ erred at step two by failing to find the Plaintiff's diagnosis of multifocal conduction block neuropathy was a severe impairment. [Doc. 11 at 5]. The Plaintiff also contends that the ALJ erred at step three, arguing that her impairment meets Listings 1.02B and 11.14. [*Id.* at 5-6]. Additionally, the Plaintiff submits that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ did not properly weigh the medical opinion of the Plaintiff's treating physician, Darrell Thomas, M.D., or the Plaintiff's subjective allegations. [*Id.* at 6-8]. As a result of the ALJ's failure to properly assess the Plaintiff's RFC, the Plaintiff further contends that the ALJ's finding at step four—that the Plaintiff has past relevant work she can perform—is likewise flawed. [*Id.* at 8-9]. The Court will address each alleged error in turn.

**1. Step Two**

The Plaintiff contends that her diagnosis of multifocal conduction block neuropathy is a severe impairment that the ALJ did not properly consider. [Doc. 11 at 5]. In support of her argument, the Plaintiff cites to treatment records in which Dr. Thomas diagnosed her with the condition in November 2013 and recommended monthly intravenous immunoglobulin ("IVIG") infusion treatments. [*Id.* at 5 (citing Tr. 507)].

At step two, "the ALJ must find that the claimant has a severe impairment or impairments" to be found disabled. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Step two has been described as "a de minimis hurdle," *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988), and serves to screen out groundless claims, *Farris*, 773 F.2d at 89.

It is well settled that the ALJ's failure to identify some impairments as "severe" is harmless

4

where the ALJ continues the disability determination and considers all impairments, both severe and non-severe at subsequent steps. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

Here, the Court finds that the Plaintiff has not met her burden in demonstrating that her multifocal conduction block neuropathy is a severe impairment. The Plaintiff essentially cites to her diagnosis as evidence of a severe impairment. A diagnosis alone, however, says nothing about the severity of a condition. *Higgs*, 880 F.2d at 863. Moreover, the ALJ continued the disability determination and properly considered her impairment at subsequent steps, specifically noting Dr. Thomas's diagnosis, IVIG infusion treatments, and the positive results of her treatment. [Tr. 16-17]. Therefore, the Court finds that the ALJ did not commit reversible error at step two but properly considered all of the Plaintiff's impairments, both severe and non-severe, at subsequent steps of the disability determination.

### 2. Step Three

The Plaintiff challenges the ALJ's step three finding that the Plaintiff does not have an impairment that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step three, a claimant may be found disabled if her impairment meets, or medically

equals, one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). "The listings" as they are commonly referred, "are descriptions of various physical and mental illnesses and abnormalities . . . defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). Only when an impairment satisfies all of the listing's criteria will the impairment be found to be of listing level severity. § 404.1525(d).

Here, the ALJ found that the Plaintiff's alleged physical and mental impairments were not of listing level severity. [Tr. 12]. The Plaintiff disagrees, arguing that her multifocal conduction block neuropathy meets Listing 1.02, which addresses dysfunction of a major joint, and Listing 11.14, which addresses peripheral neuropathies. [Doc. 11 at 5-6]. The Court will examine each listing and the Plaintiff's arguments in turn.

### a. Listing 1.02-Dysfunction of a Major Joint

The meet or equal this listing, a claimant must demonstrate evidence of the following:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> . . .
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B. An "inability to perform fine and gross movements

effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" such as prepare simple meals, feed oneself, take care of personal hygiene, sort and handle paper files, and place files in a filing cabinet at waist level. *Id.* § 1.00B2c.

Listing 11.14 requires "disorganization of motor function as described in 11.04B, in spite of prescribed treatment." *Id.* § 11.14. Listing 11.04B, in turn, states, "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id.* at § 11.04B.

Arguing that she meets both listings, the Plaintiff cites to a history of complaints involving numbness in her right foot and two of her fingers, as well as shoulder pain. [Doc. 11 at 6 (citing Tr. 305)]. The Plaintiff also cites to her diagnosis of multifocal conduction block neuropathy. [Doc. 11 at 6]. The Plaintiff states that her impairment required IVIG infusions treatment, the effects of which wore off before her next scheduled treatment and also caused adverse side effects such as fatigue and flu-like symptoms. [*Id.*]. The Court finds that the Plaintiff's arguments fall short of listing level severity.

In reaching this conclusion, the Court observes that the Plaintiff's complaints of numbness and shoulder pain does not demonstrate the requisite extreme loss of an ability to perform activities as required by Listing 1.02B, or sustained disturbance of gross and dexterous movement as required by Listing 11.14. Moreover, the treatment note documenting the Plaintiff's complaints predates the relevant time period under review. *See Melius v. Colvin*, No. CV 15–10820, 2016 WL 633953, at *4 (E.D. Mich. Feb. 9, 2016) (noting that records predating an alleged onset date are generally of limited relevance), *adopted by*, No. 15–CV–10820, 2016 WL 1104467, at *1(E.D. Mich. Mar. 22, 2016).

7

As to her diagnosis of multifocal conduction block neuropathy, the Plaintiff does not draw any connection between her diagnosis or IVIG infusion treatments and the criteria of either listing. The Court observes that treatment records from Dr. Thomas reflect IVIG infusion treatments were highly successful in treating weakness and pain experienced by the Plaintiff in her arms and hands. In fact, Dr. Thomas noted the Plaintiff was pain free, her strength was good, her fine motor skills unaffected, she had few spasms in her feet, and she could perform activities she was previously unable to do such as extend the fingers of her right hand, type, hold a phone, and apply makeup with one hand. [Tr. 16-17, 503-04, 606-08]. In July 2014, the Plaintiff reported her condition was stabilized with IVIG infusion treatments. [Tr. 606]. Moreover, the Plaintiff demonstrated 4/5 grip strength of the left hand, 5/5 grip strength of the right hand, and normal station, gait, tandem walk, heel and toe walk, single leg stand, and squatting during a February 2013 consultative examination with Robert Blaine, M.D. [Tr. 467]. The Plaintiff's allegations of adverse side effects caused by her infusion treatments are also undermined by Dr. Thomas's report that the Plaintiff did not have any side effects. [Tr. 503].

Upon review of the foregoing evidence, the Court finds the Plaintiff has failed to demonstrate an extreme loss in her ability to use her upper extremities to conduct daily living activities as required by Listing 1.02B, or significant and persistent disorganization of motor function in two extremities as required by Listing 11.14. Therefore, the Court finds that the ALJ did not err at Step three. The Plaintiff's allegations to the contrary are not well-taken.

**3. RFC**

The Plaintiff also contends that the ALJ's RFC determination in not supported by substantial evidence because the ALJ did not take into consideration the medical opinion rendered by Dr. Thomas or the testimony of the Plaintiff, including photographs the Plaintiff supplied in

October 2014 that purport to show an inability to extend her fingers. [Doc. 11 at 6-7].

"The determination of a claimant's [RFC] is a determination based upon the severity of his medical and mental impairments." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Therefore, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. Feb. 9, 2007).

The ALJ is responsible for making an RFC determination after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013). This includes a review of both medical and non-medical evidence. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

    **1.  Opinion of Darrell Thomas, M.D.**

On January 14, 2015, Plaintiff's counsel submitted a questionnaire to Dr. Thomas that asked if (1) the Plaintiff's "medical conditions would require two (2) or more unscheduled breaks during a typical 8 hour day," and (2) if the Plaintiff's "medical conditions would prevent her from being on task more than 15% of a typical 8 hour day." [Tr. 614]. Dr. Thomas responded in the affirmative to both questions. [*Id.*].

The ALJ noted that "Dr. Thomas did not provide a written analysis of findings or give a diagnosis relating to the claimant, but rather simply agreed to check boxes relating to two physical

limitations that were presented to him by the claimant's representative." [Tr. 17]. The ALJ summarized the second limitation as "a very low threshold of work activity" because the limitation assessed "essentially says that the claimant would not be able to perform regular work activity for approximately 85% of the day, and would only be on task to perform work for 15% of the day due to her medical impairments." [*Id.*]. The ALJ opined that the limitation was excessive in light of the evidence of record and inconsistent with findings made by consultative examiner, Dr. Blaine. [*Id.*]. The ALJ assigned "little weight" to Dr. Thomas's opinion, because it was not consistent with his own treatment notes or with objective examination findings that showed normal grip strength in the right hand and slightly reduced grip strength in the left hand. [Tr. 19]. The ALJ found Dr. Thomas's findings would be "purely speculative" in light of the evidence. [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. *Id.* A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently

10

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

Contrary to the Plaintiff's assertions that the ALJ failed to consider Dr. Thomas's opinion, the Court finds that the ALJ properly addressed and weighed the opinion, citing "good reason" for the weight assigned. The ALJ discussed Dr. Thomas's treatment records, citing to positive results following the Plaintiff's IVIF infusion treatments. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."). Moreover, the ALJ observed that examinations findings made by Dr. Blaine undermined the limitations assessed by Dr. Thomas. *See Klusmeier v. Berryhill*, No. 3:16-CV-339, 2017 WL 1066641, at *8 (E.D. Tenn. Mar. 21, 2017) ("[A] competing medical opinion from a non-treating source identified with other substantial evidence in the record may constitute 'good reason' for declining to give a treating source's opinion greater deference.) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004)).

While the Plaintiff's memorandum cites to symptoms of arm and hand weakens, numbness and tingling in her hands and feet, tremors, and an inability to perform certain activities such as typing or applying makeup [Doc. 11 at 6 (citing Tr. 509-10, 513)], these reported symptoms occurred prior to the Plaintiff having undergone IVIF infusion treatments. Following treatment, the Plaintiff's reports and Dr. Thomas's treatment notes do not mirror these earlier complaints. The Plaintiff persists that the ALJ is required to "give more weight to the opinion of a treating

11

source." [*Id.*]. To the contrary: "A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). Here, the ALJ set forth a reasoned basis, supported by substantial evidence, for the assignment of "little weight" to Dr. Thomas's opinion. Therefore, the Court finds that the ALJ satisfied the "good reason" requirement, and the Plaintiff's arguments to the contrary are without merit.

### 2. Plaintiff's Credibility

The Plaintiff further maintains that the RFC determination is not supported by substantial evidence because the ALJ did not consider her testimony about how her condition physically affects her ability to perform activities of daily living and ignored photographs supplied by the Plaintiff that purport to show an inability to extend her fingers. [Doc. 11 at 7].

The Court finds that the ALJ, in fact, considered and addressed the Plaintiff's subjective allegations and the photographic evidence she submitted. The ALJ discussed the Plaintiff's testimony in detail, specifically noting the physical effects the Plaintiff claimed her impairment had on her hands, fingers, and forearms. [Tr. 13-14]. The ALJ noted that the Plaintiff claimed her impairment is so severe she has to hold a cup of coffee with both hands, she frequently drops things, she has extreme trouble with her fine motor grip, she uses her left hand like a paw, her hands shake, and she has problems with work-related activities such as completing tasks, keeping pace, and has poor memory and concentration. [*Id.*]. The ALJ, however, found that the Plaintiff's testimony was not supported by the objective medical evidence of record. [Tr. 14-20]. In addition, the ALJ found the Plaintiff's allegation that she would be absent from work for seven days a month

12

following her IVIG infusion treatments unsubstantiated. [Tr. 19]. In this regard, the ALJ held the record open after the hearing for her to submit supporting evidence by Dr. Thomas, but no further evidence was submitted. [*Id.*]. The Court further observes that Dr. Thomas noted the Plaintiff did not have any side effects from her IVIG infusion treatments and the Plaintiff did not voice any concerns. [Tr. 503]. Moreover, the ALJ observed that several treatment records merely documented the Plaintiff's self-report of worsening symptoms without supporting examination findings, and the Plaintiff's reported daily living activities further undermined the credibility of her allegations. [Tr. 16, 19].

The ALJ also addressed the photographs of the Plaintiff's hands, which the Plaintiff claims show that she cannot open her hand, her extensor muscles are severely and permanently paralyzed, her little finger on her left hand is the only functional finger, and some of her fingers on her right hand suffer from partial paralysis. [Tr. 18]. The ALJ found, however, the Plaintiff's allegations were contradicted by Dr. Blaine's examination findings which included 4/5 grip strength in the Plaintiff's left hand and 5/5 grip strength in her right hand. [*Id.*].

While the Plaintiff may disagree with the level of deference the ALJ gave to the Plaintiff's testimony and photographs, the Court finds the ALJ's findings are nonetheless supported by substantial evidence and must therefore be upheld. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached."); *Walters*, 127 F.3d at 531 (holding that an ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility").

### 4. Step Four

Lastly, the Plaintiff submits that the ALJ's step four finding—that the Plaintiff has past relevant work as a dental assistant and dental receptionist that she can perform [Tr. 20]—is not supported by substantial evidence because the Plaintiff's multifocal conduction block neuropathy prevents her from engaging in substantial gainful activity. [Doc. 11 at 8].

Having found that the Plaintiff's RFC is supported by substantial evidence, the Court finds no merit in the Plaintiff's step four allegation. "A claimant bears the burden of proving she cannot perform her past relevant work either as she performed the job or as the job is generally performed in the national economy." *Ellis v. Astrue*, No. 3:11-CV-535, 2012 WL 5304203, at *5 (E.D. Tenn. Oct. 4, 2012) (internal citations omitted) (citing *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987)). During the administrative hearing, a vocational expert testified that given the Plaintiff's RFC, she had past relevant work as a dental assistant and dental receptionist. [Tr. 42-43]. The ALJ relied on the vocational expert's testimony to make her step four finding that the Plaintiff has past relevant work she can perform and is therefore "not disabled." "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). Accordingly, the Court finds the ALJ's step four determination is likewise supported by substantial evidence.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 10**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 12**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge